IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 9, 2003

## STATE OF TENNESSEE v. LEVAR GRAY

**Appeal from the Criminal Court for Shelby County**
**Nos. 00-02081, 00-02082, 00-02083, 00-02084     W. Otis Higgs, Jr., Judge**

---

**No. W2002-02259-CCA-R3-CD  - Filed January 21, 2004**

---

The defendant, Levar Gray, was convicted of two counts of aggravated robbery and two counts of aggravated kidnapping.  The trial court imposed sentences of twelve years for each of the four offenses.  Because the trial court ordered partially consecutive sentencing, the effective sentence is twenty-four years.  In this appeal of right, the defendant contends that the evidence is insufficient to support the convictions and that the sentence is excessive.  Because the record does not support the imposition of maximum sentences for each conviction and because consecutive sentences were not warranted, the judgments must be modified to reflect concurrent sentences of ten years for each conviction.

### Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed as Modified

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

Ross A. Sampson, Memphis, Tennessee (on appeal), and Charles Waldman, Memphis, Tennessee (at trial), for the appellant, Levar Gray.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; and Betsy Carnesdale, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The convictions were the result of two separate incidents.  The first occurred at approximately 1:00 P.M. on September 22, 1999. University of Memphis graduate student John Hoggard was walking from the library to his car when he encountered two men, one of whom he later identified as the defendant.  After Hoggard refused to give change for a dollar, one of the men, later identified as Lawrenzo Menton, blocked Hoggard's path, placed "his hand in his pocket where he had a bulge and said that it was a holdup."  Menton threatened to shoot Hoggard if he did not hand over his wallet.  The defendant, standing behind Hoggard, claimed to have a gun.  When the

men discovered that the wallet contained only twenty dollars, they forced Hoggard into the backseat of a white, early eighties model, four-door car for the purpose of transporting him to a bank to cash a personal check. According to Hoggard, there were no door handles on the inside of the backseat of the vehicle. He also recalled that both Menton and the defendant repeatedly asked him "which was more valuable, my money or my life." When the men tried to cash the check Hoggard had written at the drive thru teller, they learned that he was not an account holder at that bank and were asked inside. While Menton and Hoggard went inside the bank, the defendant stayed in the car. They were unable to cash Hoggard's check.

Eventually, the perpetrators drove Hoggard to an automatic teller machine, where he was forced to withdraw $200. The two men then drove to a shopping mall and demanded that Hoggard use his credit card to buy them shoes. While there, Hoggard was able to escape into a Dillard's store and persuade an employee to call security. At trial, Hoggard explained that he had cooperated with his assailants because he believed that each possessed a gun, despite not having actually seen any weapons, and would kill him if he refused their demands.

Two days after Hoggard's abduction, Justus Cousar, who was also a student at the University of Memphis, was abducted in the early afternoon by two black males traveling in a white, four-door car. The driver, later identified as Menton, announced that he had a gun, and directed Cousar into the backseat of the car. Cousar recalled that there were no handles on the inside of the car's back doors. The defendant, who was seated in the passenger seat, threatened Cousar with a metal pipe saying, "Don't make me hit you in the head with this." Cousar gave the men his wallet, which contained approximately $50. After inspecting the contents of Cousar's wallet, Menton demanded to know the personal identification number for his automatic teller machine card. Cousar, who was lying in the backseat, provided the number to Menton. Cousar remembered that the perpetrators made four stops, presumably at different automatic teller machines. He recalled that Menton got out of the car during the first two stops and the defendant got out during the last two stops. A total of $80 was withdrawn from his bank account.

The perpetrators also demanded to know the personal identification number for his credit card and after Cousar informed them that he did not know it, the two men stopped at Valentine's Bar and Grill so that Cousar could make a $200 cash withdrawal on his credit card. After taking the cash, the men purchased gasoline with Cousar's credit card and then drove back to the University, where they released Cousar. Charges totaling $240 dollars were made to Cousar's credit card. As Cousar walked away, he encountered a University of Memphis police officer and reported the incident. Cousar later identified the defendant from a photographic lineup.

On the day after Cousar's abduction, Eric Elms, a second year law student at the University of Memphis, was walking to his apartment when the driver of a car approached him, blew the horn, and shouted. Elms turned around and saw a white, four-door, early eighties model car. Aware of the crimes against Hoggard and Cousar because of fliers posted at the University, Elms walked quickly to his apartment and telephoned 911. While Elms made a statement to University police, officers received information that a vehicle matching the suspect vehicle had been stopped. Later,

Elms identified the car as the one which had followed him. He was unable to identify either of the two men who were in the vehicle.

Officer Mike Shearin of the Memphis Police Department, along with Sergeant Stan Bowles, questioned the defendant after his arrest. After being informed of his Miranda rights and signing a written waiver, the defendant admitted that he was present when both Hoggard and Cousar were robbed, but claimed that he did not participate in the robbery. The defendant contended that Menton planned and carried out each of the robberies. According to Officer Shearin, the defendant insisted that he did not know that Menton planned to force the victims into the car. He claimed that neither he nor Menton possessed a weapon during the crimes, explaining that Menton pretended that his cell phone was a gun. The defendant asserted that he did not receive any of the proceeds from the first robbery and received only $50 from the second.

**I**

The defendant first asserts that the evidence is insufficient to support his convictions. Specifically, he contends that the state failed to established that he used or displayed a deadly weapon during the commission of the crimes. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Aggravated robbery, as charged in the indictment, is "robbery . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402 (a)(1). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a).

Aggravated kidnapping, as charged in the indictment, is "false imprisonment . . . committed . . . [w]hile the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon." "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a).

The evidence, in the light most favorable to the state, establishes that the defendant and Menton stopped Hoggard as he walked to his car and eventually threatened to shoot him if he did not give them his wallet. The state's proof was that the defendant, who stood closely behind Hoggard, also claimed to have a gun. Inside the car, both Menton and the defendant threatened to shoot Hoggard if he did not comply with their demands. The defendant admitted to police that Menton pretended that his cell phone was a gun. Hoggard was confined to the backseat of the car, which had no inside door handles, as the two assailants attempted to obtain money from his bank account. That Hoggard did not actually see the defendant with a weapon during the crimes is of no assistance to the defense. See State v. Daryl Anthony Jemison, No. 01C01-9303-CR-00107 (Tenn. Crim. App., at Nashville, Mar. 31, 1994) (although the defendant did not actually possess a weapon, "the jury was entitled to accredit the [defendant's] threat and to infer from it and his hand positioning that he was armed."); see also State v. Melvin Harper, No. E2001-01089-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Dec. 12, 2002). The jury chose to accredit testimony that the defendant claimed to have a gun and made threats toward Hoggard to ensure his cooperation. Under these circumstances, the evidence is sufficient to support the convictions for the aggravated robbery and aggravated kidnapping of Hoggard.

With regard to the crimes against Cousar, the evidence adduced at trial established that Menton informed Cousar that he had a gun and forced him into the backseat of the car. While inside the car, the defendant threatened Cousar with a metal pipe and demanded his compliance. Like Hoggard, Cousar was confined to the backseat of a car that had no visible means of escape while Menton and the defendant tried various methods of obtaining money from his bank account. In our view, this evidence is sufficient to support the defendant's convictions for the aggravated robbery and aggravated kidnapping of Cousar.

**II**

The defendant also contends that the trial court erred by imposing consecutive sentencing. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the

defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

The trial court imposed a sentence of twelve years for each of the defendant's convictions and ordered that the sentences for the convictions relating to Hoggard be served concurrently to one another and consecutively to the sentences for the convictions relating to Cousar. The sentences for the convictions relating to Cousar are to be served concurrently to one another. The effective sentence is, therefore, twenty-four years. In imposing the twelve year sentences, the trial court failed to consider the sentencing principles, made no findings regarding the applicable enhancement or mitigating factors, and simply ordered the maximum sentences within the range. The single reason offered for the sentence was that Menton received a twenty-four year sentence.

As indicated, the trial court failed to make findings with regard to the applicable enhancement and mitigating factors in setting the sentences at the maximum within the range. Although there was a suggestion during the trial that the defendant was on judicial diversion at the time of the offenses, nothing in the record documents that claim. Moreover, the presentence report states that the defendant has no adult criminal convictions. There is no mention of judicial diversion. Indeed, the presentence report contains only one prior offense, a juvenile adjudication for robbery. Because robbery qualifies as a felony offense, enhancement factor (21), that the defendant committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult, would apply to each of the convictions. See Tenn. Code Ann. § 40-35-114(21) (2003). That the defendant admitted the regular use of marijuana for a number of years supports the application of enhancement factor (2), that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(2) (2003). The defendant's education, positive work history, and family support serve as mitigating factors. See Tenn. Code Ann. § 40-35-113(13). In addition, Tennessee Code Annotated section 39-13-304(b)(2) mandates that the voluntary release of each of the victims be considered as a mitigating factor with regard to the convictions for aggravated kidnapping. Applying these factors to the defendant's aggravated robbery convictions, the midpoint in the range, ten years, is appropriate. Similarly, a midrange sentence of ten years is appropriate for each of the convictions for aggravated kidnapping.

The defendant also contends that the trial court erred by imposing consecutive sentences without considering the appropriate sentencing principles. Prior to the enactment of the Criminal

Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> (6) The defendant is sentenced for an offense committed while on probation; or
> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that

---

[1] The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); <u>State v. Lane</u>, 3 S.W.3d 456 (Tenn. 1999).

As indicated, the trial court made no findings as to the factors supporting consecutive sentencing. Our review of the record establishes that the defendant does not have an extensive criminal history, does not qualify as a dangerous mentally abnormal person, and was not convicted of contempt or two or more statutory offenses involving the sexual abuse of a minor. <u>See</u> Tenn. Code Ann. § 40-35-115(b)(2), (3), (5), (7) (2003). Further, the record does not support a finding that the defendant is either a professional criminal or a dangerous offender. <u>See</u> <u>id.</u> § 40-35-115(b)(1), (4). Finally, the record does not establish by a preponderance of the evidence whether the defendant was on probation at the time of the offenses. Because the record does not support a finding that the defendant qualifies for consecutive sentencing under any of the <u>Gray</u> factors, the sentences must be served concurrently.

Accordingly, the judgments of the trial court are affirmed as modified.

_____
GARY R. WADE, PRESIDING JUDGE